The next case in the docket is 523-0471. For the appellant, Douglas Seward. For the applicant, James Mascoutah. Any other questions? Yes. Whenever you're ready, you may begin. We'll let counsel get settled in first. Good morning, Justices. Justice Gates, Ramoli. I appreciate being here in the building. I actually argued in front of you a few months ago, but we were still oral at the point because we were doing the renovation, so it's kind of cool to be here for the first time. As stated, I'm Doug Stewart. I represent the appellant, Triune Properties. In this dispute here regarding an order entered by the now-retired Judge Katz, the underlying dispute here really comes down to whether a road is a road. And obviously, we have a bunch of conflicting personalities on how we want to define that. Again, the appellant stands here today asking the court to reverse the lower court's erroneous ruling. The lower court vacated 2,000 feet of roadway based on a document that expressly states only 1,000 feet should be vacated. The lower court then reestablished the right-of-way south of the current roadway and disregarded that the roadway had been used and maintained in its current location for nearly 100 years. The lower court completely disregarded the factual history established by the affected property owners to the south. The trial court erred when finding that the 1933 meeting minutes vacated double the distance expressly stated in the document. Furthermore, the trial court erred in finding that the right-of-way was reestablished south of the current roadway. The trial court erred in finding that the use of the roadway was permissive by the landowners and thus not adverse to their interests. The trial court erred in not reopening the proofs when appellant presented newly found evidence that directly refuted testimony by appellee's expert that the trial court decided the case don't solely on that expert's testimony. Error is typically established through two primary mechanisms. First, there's a statutory dedication process that's illustrated under the Highway Code and similarly, there's a common law dedication process. The parties do not dispute that prior to this 1933 meeting that there was an established roadway that was used by the Muscogee residents in the area around it. The parties dispute the effect of these meeting minutes that the townships voted on in which the document with the intent of vacating a portion of the Eisenhower Roadway. It's important to note that under the Highway Code, after that meeting, there is typically a legal description that the highway commissioner is supposed to file with the recorder of deeds in the county. Despite the expert's testimony stating that he had reviewed all these documents, there was no production of that document. Appellants were unable to locate it and I'm assuming that appellees were also unable to locate it. Again, when a township vacates a roadway, a hearing is held pursuant to 6305 of the Illinois Highway Code. Upon completion of the hearing, the highway commissioner files records with the recorder's office with a detailed legal description, identify the vacated portion pursuant to 6-329. To determine the vacated roadway is deeded back to the adjacent landowners, here there is no record of that document. In fact, the records that were located all reference an abandoned road. Specifically, the appellate's deed and the appellee's deed both reference the Bellbomes-Gouda County Road as abandoned, not vacated. The abandoned portion is only referenced within appellant's property boundaries. It's not referenced along any portion of the part that was actually deeded to appellee. There's no other reference to the roadway, more specifically, other than the meeting minutes. There's no property records that actually reference a vacated roadway. Will, please. You're relying on 65 ILCS 5-11-91-1. Now, I referenced that in my brief. That actually is the municipal code, but that only would apply for the city of Mascouda after the annexation occurred. And I appreciate that's my mess-up. The actual statute that applies is the Illinois Highway Code. And the sections that are pertinent for there actually range from section 6-305 to section 6-329. That's the pertinent statutory provisions that cover the vacation of a highway controlled by a township. Was there an objection to the introduction of these 1933 amendments? There was not an objection to the document being waived. Arguably, I don't think the issue is that the document was introduced into the record. The effect of the document is what the appellant is challenging here. The document just shows an intent by the townships to actually vacate the road. It's not an operative document. To be an operative document, the commissioner actually has to file records with the county clerk under 3-209. The other part of it, and there's testimony in the transcripts to where both the city of Mascouda's council and myself questioned the effect of the 1933 documents because it specifically references points in the future that had not happened at that point. Specifically a reference when a new road is opened, that portion of the road would be vacated. There's no evidence in the record when or if that road was ever actually opened. It specifically references a Route 12. The closest route there is actually Route 177. Additionally, when we were going through the testimony, the focus was actually on the distance of the vacation. Again, in the document, it specifically states 1,000 feet, period. The expert testified that he interprets that to mean a 2,000-foot distance was vacated. Now, there's a fallacy between the expert's testimony and Judge Katz's ruling because she ruled that the operative document had the effect of vacating 600 feet of roadway, and there's nothing in either the document or the testimony that references that 600 feet. Specifically, we went 1,000 feet from Silver Creek to the boundary of Appellant's property is 1,000 feet. Adding another 1,000 feet, and this is in the transcript, takes you all the way to what arguably can be considered the next major intersection, but there's several properties along that way that would have lost access to their properties. And again, under the Highway Code, there has to be a finding by the Highway Commissioner in part of these minutes that no adjacent property owner would lose access to their property. And there's none of that in the record. There's none of that in that 1933 document. Again, the Appellant's argument is that was just to show an intent to vacate the road. That's not actual documenting the vacation of the road. And the Illinois Municipal Code follows a very similar procedure. There's got to be a hearing. There's got to be a legal description. And there's got to be something filed at the recorder's office. And that's pretty standard almost in all property law. Now, let me stop you for just a second. Please. Am I to understand that the document that the 1933 document that reported to vacate the road said that it was 1,000 feet total that was in dispute or that was being discussed to be vacated? It specifically states 1,000 feet, sir. The expert at the trial indicated that it was actually 2,000 feet. Correct. And Judge Katz's ruling was that 600 feet was vacated. Correct. Now, there is an argument that Appellee will want to make that the first 1,000 feet is within the distance of Appellant's property. And then the additional 600 feet is tacked on top of it for a total of 600 feet. But either way, we're not at 1,000. We're not at 2,000 feet. We're somewhere in the middle. Again, it's very important that we focus on the finite language of the document. And I have a quote that I can go in the specific line is, which runs then from Section 36 from the point of the intersection of Sack Road with the Westerly Township line to a point approximately 1,000 feet easterly. Looking outside the document to the extent there's an argument over the intent, again, Ms. Bailey's deed, trying properties, references the road that crosses her lot as abandoned, not vacated. In the deed to Lakeside that Ms. Bailey signed, the only reference is the actual exempted portion, which describes the property that she still currently owns. The deeds for the other two neighbors along that stretch do not reference an abandoned or vacated roadway, despite the expert stating that he reviewed those deeds prior to his testimony. Thus, additional evidence that Eisenhower Road continued to be a roadway after that 1933 Township meeting in question. And also, I do note that prior to the 1933 vacation, it was referred to by Belleville-Mosquito County Road. So the whole fact that this is being referred to as Eisenhower, the Postal Service calls it Eisenhower, I think is pertinent to the record as well. Given this, the appellant requests that the court reverses the ruling to the extent that it found the road was vacated, and remand this matter for further proceedings. Now, to the extent that the court agrees with the vacation, appellant argues that we've established a common law dedication pursuant to the Supreme Court precedent in Morris and in Stevenson. The court found that, excuse me, Judge Katz found that the right-of-way was reestablished south of the current location of the roadway. So effectively, the judge found that the northern half of the right-of-way was vacated, the southern half was reestablished through additional plat maps. As part of the appellant's motion to reopen proofs, we introduced two plat maps that were recorded. We were unable to locate them prior to the testimony, but after the expert referred to them, we located them and actually found that the right-of-ways were detailed as a 60-foot right-of-way as late as 1976. In front of and across the street from the Lakeside property that is now in question. Sir, for the fact that's why you have not discovered this new evidence before the bench trial? In the motion, we at the time, Judge, the expert referred to the documents as part of his testimony. Yes, as part of our motion to reopen proofs, we documented that we attempted to go through those old records. We're going to locate them. But additionally, when he referred to them, it actually drew our attention back to look for additional information regarding those specific plats. And he specifically, in the transcript, refers to the Haggis subdivision, which is the two plats that I introduced. One of them is an 1863 plat, and one of them is a 1976 plat, if I remember correctly. And while one says it's a 66-foot right-of-way, the other one says it's a 60-foot right-of-way. So there's a consistency between the two, and it's a clear indication that there was never intent to reduce that to a 30-foot right-of-way. And then, of course, move it south of the current location. And again, there's a common-sense element here that I'm really trying to advocate for. At the end of the day, this road never moved throughout the whole lifetime of this. All this deed history, everything else, that road remained in the current location. Now, under a common-law dedication, assuming, again, that the vacation was proper, you can actually show the common-law dedication through a— forgive me, I'm losing my train of thought— for the property owner has to actually show some kind of attempt to dedicate it, which allowing the public to use is allowable. Additionally, for the second element, there's got to be some kind of effort by the municipality or the public in terms of use. Here, we have testimony from the property owners that dates back to the 1950s that they witnessed the townships maintain that property on a systematic basis. Now, there's an argument that it was sporadic, but all maintenance in townships is kind of sporadic because it comes as funds are available, and they pull resources as they can. But they systematically went on an oil and chip. Every few years, they came down. Every year, whenever there was snow removal, the snow was removed. And the adjacent property owners all testified to that. And forgive me, Justice Katz, I recognize I'm focusing on them, but forgive me if I'm not focusing on you. But then, additionally, there's got to be public use. And, of course, we have documented testimony that all those adjacent landowners— and this was uncontradicted by the appellee—that they allowed the public to use, they saw the public use it, and they acquired their properties believing that it was a public roadway and, therefore, did nothing to stop it. And there's prior case law. In Judge Katz, actually, I have another—the other case, Judge Katz kind of made a similar error in terms of what permissive use is. In both cases, she went—she applied permissive use means that the property owner knows people are using it and does nothing to stop it. But if the property owner doesn't know they own it, then it's not permissive. It's not considered permissive use under the case law of this district. And that's another location where I thought she erred in her opinion. Mr. Stewart, you're talking so fast. It's hard, yes. What confuses me about this case is Linda Bailey executing a warranty deed that actually conveys the northern half of this Eisenhower Road in front of the property of the Lair Sisters and Richard Surmeyer to the lakeside estates or the golf company that's developing. How can she do that and then claim that the road shouldn't be vacated? Well, two—there's two parts to that. First, she didn't know that the appellee intended to vacate the road. There was no conversation as part of that sales process. But she deeds the road. She must know that the road is part of that property, her property. That is the golf course property. Let's call it the golf course property as opposed to the horse farm. She must know that part of that property belongs to the golf course if she's putting it in the deed. In fact, my recollection is there was a contingency on that. So the contingency was not on the road being included. The contingency was on the annexation and subdivision plat being approved by the city of Mascouda. Secondly, while Ms. Bailey signed— But the annexation was for the road, which means that when you annex, it goes to the other side of the road. Correct, and that's her argument. Originally, how this case started, Judge—or Justice, Ms. Bailey learned that they intended to remove that roadway. And, of course, we filed a suit to stop the roadway from being removed and force the city of Mascouda to do a proper vacation process. That was originally the underlying dispute that started this litigation. During the course of that, this 1933 document came to light, and then the argument became that the road was always vacated and never meant to be a road throughout the whole way. I do point out that the appellee had two representatives of the developer, basically both part owners—and the appellee can correct me if he wants— that were both evasive in their testimony on whether or not they thought that was a road. They kind of just like, whatever, you know—basically, they did everything they could not to answer the question. Ms. Bailey, while she was a member of both LLCs, the Tri-Owned Properties owns the horse farm. A different LLC owned the golf course. So there's two separate distinct properties that were just adjacent along that line. There's no testimony that Ms. Bailey was a sole member of it. She could be representing multiple members in each LLC, so I think that's pertinent. Additionally, it's very common in boundary lines that the boundary line actually between the properties butts up along the middle of the right-of-way. And while there is a right-of-way, the ownership still goes up to the mutual boundary line. So the fact that she did it the road, there's a contingency in the deed that it's subject to all the easements, right-of-ways, and stuff already in the record. So I don't put a lot of credence into the argument that she created the problem. Because, again, she didn't know that everyone in the area just kind of assumed it's a road. And the neighbor, Mr. Surdmayer, testimated that he was using that road back in the 1980s, driving to see a college buddy of his or a high school classmate or something. So it created an absurdity to them that anyone would consider this not a road. And that's the way I address Ms. Bailey's participation in this. Okay, thank you. And the other thing I want to point out, to go back to these students. Go ahead, I'm out of time. If you want to just summarize real quick this part of the argument, you'll have time to do both. To sum up, the 1933 document does not have the effect of vacating 2,000 feet of roadway and cutting off numerous property owners. And to the extent it has any effect, the property owners rededicated that through a common law dedication, and it still should be considered a roadway today. Thank you. Thank you. Thank you. Smash up whenever you're ready. Thank you. May it please the Court, Counsel. First of all, Counsel now is switching what statute he's relying on for the argument that the 1933 document did not meet some standard of vacating a road. It's not in his brief. It's not cited anywhere. And, you know, I haven't read that section, therefore, because of that. What he did cite is to a municipal code that does not apply to townships. Secondly, as Your Honor pointed out, this document was admitted without any objection, and the only expert testimony about that document is the appellee's expert. Appellant has no evidence to counter the testimony of the expert who says that based on his review, that document vacated the portion of the road that said issue. In addition, the document doesn't just say 1,000. It says approximately 1,000 to an intersection, and the expert testified that as a surveyor, you use monuments over and above distance because this document talks about them meeting on a bridge in 1933 and looking at this area and determining what they were vacating. It's clear that when you determine what you're vacating and you're not in an office or you're not out there with equipment to measure, if you say to an intersection, that's what you look at. In addition, the court only vacates 600 feet, not 2,000. In addition, what was the court relying on when it vacated 600 feet, if not the original document that said 1,000 or the expert testimony that said 2,000? She, I think, narrowed her judgment to only apply to the issues that were before her. I think she's saying 600 feet is what is at issue in this case. Does she say that in an order? Does she specify how she came up with 600 feet? She says that the northern half, approximately 600 feet from Eisenhower Street to the horse ranch, is part of Lakeside and not a public street since it was vacated and has not been reestablished by public use. She, in her findings of fact, talks about the document and says that it vacates that 600 feet. She doesn't go into any more detail than that. So the railroad was vacated. That's the evidence. That's the only evidence. And the court's finding is supported by that evidence. It would be an issue of law, I believe. So the findings of fact would be subject to manifest weight of the evidence. But whether or not that document vacates it, I think, is a mixed question of law and fact. And I think that it's probably a manifest weight of the evidence standard since it's a mixed question of fact and law. The vacation of the road has to have some formality to it other than the notes from the meeting. Is there any formal document that vacates that road? Well, the minutes were recorded with the county. It's minutes of a meeting of the county. If I remember correctly, doesn't it state that it would be vacated in the near future when a new road is established or connected? When a contingency occurred and the expert testified that the contingency had occurred. But it refers to a Route 12, I believe. And was it Route 12 or Route 7? I forget what the number was. But isn't it like Route 12 is in Chicago somewhere? I don't have that document in front of me. But my memory is that it referred to an east-west road. It said a road that will go east-west from so-and-so to so-and-so. I don't think it gave the number of the road, but maybe I'm wrong. The document is in the record. But at the time that that road was finally connected, was there any formality that was necessary to vacate that other portion? I don't believe so. I think that the minutes said that it was vacated effective upon a contingency happening. And the testimony is the contingency happened. It therefore happened by operation of law when that contingency was met. We have no document that says after 1933 they said, hey, this contingency has been met, so this is now truly vacated. I would point out that we're dealing with very old documents, and the documents are now with a historical society. So it's not easy to find any other documents that relate to this vacation. But just because there are no other documents that have been found doesn't mean that they don't exist, and it's not my burden to prove that those other documents exist. I presented evidence, and an expert testified that that evidence was sufficient to show a vacation. I think the burden is on my opponents to prove that somehow it's not effective. So I believe that the road was vacated. The next question is, and I believe the 600 is the appropriate finding by the judge, because that's what was at issue in this case. The next question is, was it reestablished essentially by adverse possession? And I think clearly the case law says that it has to be public use, and there is no evidence that public other than the people who lived on the homes adjoining that street, you regularly use this road. It's a dead-end road. It's clearly in the evidence that it's a dead-end road. The 600 feet that we're talking about, no member of the public is going to go down it because there's nowhere to go. And I cite a case that says in Kauswitz v. Freiblander, 12-11, or Illinois at 3rd, 1017, that says in 1973 that the mere fact that residents, visitors, and people serving the residents use a road does not satisfy the issue of public use. So with regard to the use of, the public's use of this section of the road or of a road, is it required that the use is actually, that the use actually takes place, or is it just simply that the public has access to use it? No, I think the cases are pretty clear that the use has to take place. Let me, I'm sorry. No, go ahead. I paused and let you get started. With regard to the testimony that was before the court, it's my understanding that plans presented testimony from several people who either lived on that property or in that area as to other people using the road, that they witnessed people using the road. Was there any contradictory evidence or anyone to dispute any of that in terms of what the court heard? Just for specificity, I believe that they testified they used the road. People who were delivering things to them, like the mailman used the road, and they were aware of one instance where a car had an accident and nobody knew what that person was doing on that section of the road when they had an accident. I don't believe there's testimony that there's consistent public use of this road. There was one accident, and who knows if that person's lost, and there's people who need to get to these homes, and that was what the testimony was. I don't think that satisfies public use. So, no, we do not have evidence that says that those facts don't exist, that there wasn't an accident or that there were not people going to their homes or delivering things to these homes. But there is an absence of evidence that regular public travelers that are going from point A to point B used this road to get from point A to point B. And I would just wrap up by saying that I think it is absolutely correct that Judge Cates says that it's very important that Ms. Bailey signed this warranty deed, and the warranty deed clearly covers this section of the road. And now she took the money through a corporation, I guess. She took the money from my client, and now she wants to say, oh, by the way, that property that I sold you and took the money for, I get to use part of that still, even though I never told you that. I think the judge properly finds that she is stopped from making the argument that this is a public road. I'm sorry, go ahead, Justice Cates. Is it Mr. Massoff? You didn't introduce yourself. Yes, Your Honor, Mr. James Massoff. Okay. I'm concerned about the 600 feet that the judge just picks a number because it's at issue. I mean, either the minutes control and the expert witness, I mean, how does the judge just pick 600 feet because it's at issue? Well, I think she was trying to say she doesn't explain why she chose 600 feet, other than the fact that in the record it was testified to that this is 600 feet that is being argued about. And so she's trying to make a narrow finding, since there's other people that could argue about whether this is a public road on the rest of it, but the people that were in this case and testifying all were there that dealt with this 600 feet. So I think she's just trying to limit it for that purpose, to not affect the rights of others who weren't present before the court. Okay, thank you. Well, one additional thing, if I may. The idea that proofs should have been reopened and the evidence that he was purporting to just find after the trial was all stuff that had been recorded with the Recorder of Deeds. And he had minutes to find that in the Recorder of Deeds office. I don't see that there's any evidence that somehow he had been prevented from finding those recorded documents. So I believe the argument was that when your expert testified and referred to those two plats, that that was the first time that they became aware of those plats' existence. Obviously, they were in existence. But were those documents that the expert relied on to form his opinion, were those submitted in any kind of discovery request? I mean, there was no discovery request asked for us or given. So we didn't respond to discovery because discovery was not transmitted to us. Okay, thank you. Justice McCain, any questions? Justice Cates, any further questions?  Okay, thank you. Thank you, Your Honor. Thank you. Mr. Stewart? Just a few quick questions. Actually, that was one of the points I wanted to address, Judge. Remember that the road was a thoroughfare prior to that 1933 vacation, and we have no testimony on when that road was vacated and the portion of pavement was actually removed. Ms. Laird, who testified, actually says that she remembers being a young girl and watching people use that Mosquito Belleville County Road and crossing that bridge. It became a dead-end road after the road was abandoned, vacated. Whatever that portion was, it's within that dead-end portion because there is a section of pavement between Silver Creek and the dead-end pavement that was removed. So I argue that the case law that he's referring to doesn't apply to the situation because it was a road prior to it becoming a dead-end. The fact that it became a dead-end as part of the process, I think, is kind of a negligible point or a moot point. Additionally, the case law that is before us, yes, there is that one case that talks about a dead-end. Like, there has to be more. Like, there has to be a public belief that that is a public roadway. And while the three landowners testified that they believed it to be a roadway when they owned it, all three also testified that they believed it to be a public roadway prior to acquiring the properties that they now own. Mr. Surmaier testified that he used that road as a public use when he was a young lad. Ms. Bailey testified that she witnessed people using that roadway prior to her assuming ownership. And, of course, Ms. Slater, who gives us a history all the way back to the 1950s as a young girl, she talks about witnessing people consistently using that roadway throughout the years. So I think that dead-end argument doesn't apply to the situation. And Mr. Mashoff characterized some of that testimony as being that those people who testified in regard to what they saw, what traffic they saw, somehow that was limited to we saw neighbors using it or people accessing their homes or the mailman or delivery trucks or things of that nature. Was that your recollection of the testimony that was given? No, no. I think that minimizes what the testimony actually was. I believe that, especially Ms. Slater, who, again, gives us the most documented history in terms of her recollection, as a girl, she watched people use that road to get in and out of the city of Mascouda. And that was when she would go, she talked about going to visit her uncle as a young girl and just watching people drive up and down what is now Eisenhower Road and completely just believes that that to be the normal course of events. The argument regarding the auto accident actually was just a random member of the public who still believed that road was a thoroughfare. And this is a common occurrence in the city of Mascouda. It's a dead end street now, but people still have some recollection that they think it's a thoroughfare and they do go through that route. I want to get on the Route 12. The Route 12 was specifically referenced in the 1933 vacation document. And, again, that's some Chicago route, so I can't testify to that. The document specifically says 1,000 feet to a point, and it does not reference to an intersection. That sentence ends after it says to a point. There's a period, and they start a brand-new paragraph. There's no reference to an intersection or a joining road or anything like that. That's part of the contingency. It doesn't include in the legal description. Again, the use can be one single person use it. As long as the members of the public believe it to be a public road, then the threshold is met in terms of a common law dedication. While we have testimony from our adjacent property owners, they're all testifying that they believed it was for public use. And I think it's important for Ms. Bailey's sake because she was the golf course owner. She testified that she believes that while she owned that property, the public could use it free and clear, and that effectively counts as the owner dedicating the property to the public for the use. So I think that common law dedication to the extent where the vacation is proper, I think that common law dedication threshold was met. And with that, I believe I'm out of time or just out of time. Any questions, Justices? No. Well, thank you so much. Thank you. Thank you both for your – one thing I do want to point out on the appellant's brief, we have – I noticed that we were missing page numbers on the tables of points and authorities. It's customary or helpful for us if you reference those things in that table of contents and points of authorities as to where we would find those in your brief. So it probably was just oversight, but I'll just point that out for next time. Thank you both for your briefs, and thank you for your arguments today. The court will take the matter under – into consideration and issue its ruling in due course.